UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MISCELLANEOUS WAREHOUSEMAN'S LOCAL 781 HEALTH & WELFARE FUND, | ) ) ) | |
| Plaintiff, | ) ) | No. 17 C 5 |
| v. | ) ) | Judge Sara L. Ellis |
| FULTON MARKET COLD STORAGE CO., LLC, d/b/a HASAK COLD STORAGE, | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Having determined that Defendant Fulton Market Cold Storage Co., LLC, d/b/a Hasak Cold Storage ("Hasak") underpaid its contributions for its employees' health care benefits between 2015 and 2017, Plaintiff Miscellaneous Warehouseman's Local 781 Health & Welfare Fund (the "Fund") filed this action against Hasak. The Fund seeks to collect these unpaid benefit contributions, in addition to interest, liquidated damages, attorneys' fees, and costs, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The parties have filed cross-motions for summary judgment. Because the Court finds that the collective-bargaining agreement supports the Fund's right to the contributions it seeks, and that the Fund has the right to collect these amounts in litigation regardless of the union's position on the issue, the Court enters judgment for the Fund and against Hasak.

## BACKGROUND[1]

The Fund is a multiemployer welfare benefit plan subject to ERISA. It provides health care benefits to employees of contributing employers, including Hasak, pursuant to a plan of

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. All facts are taken in the light most favorable to the non-movant in each motion.

benefits. These health care benefits are paid from employer contributions to the Fund pursuant to terms set forth in collective-bargaining agreements between employers and the respective union.

Hasak operates a cold storage facility for perishable products in Lyons, Illinois. It has a collective-bargaining agreement ("CBA") with Miscellaneous Warehousemen's Local 781 ("Local 781"). Under the CBAs relevant to this case, those effective from January 1, 2011 through December 31, 2014 and from January 1, 2015 through December 31, 2017, Hasak agreed to pay a specified amount per month for each "regular employee . . . who has been on the payroll thirty (30) days or more to the [Fund]."[2] Doc. 22-1 at 15, 40. The monthly contribution rate changed each July. From July 2014 through June 2015, it was $1,046.55. From July 2015 through June 2016, it was $1,104.11, increasing in July 2016 to $1,131.66. For July 2017 through June 2018, the monthly contribution rate was $1,154.29.

The CBA further provides that "[n]ew hires shall be deemed temporary employees and on a trial basis until they have worked for sixty (60) days. . . . At the conclusion of the sixty (60) day trial period, new hires shall be deemed regular employees and shall thereupon receive the same benefits and terms and conditions of employment as regular employees." *Id.* at 7, 32–33. The CBA gave Hasak exclusive rights to the management of its business and the direction of its work force, including "the right to discharge for proper cause, transfer, promote, demote or relieve employees from duty because of lack of work or for other reasons, . . . and the right to establish and maintain rules and regulations governing the plant." *Id.* at 7, 33. But such rights were "not to be exercised in violation of any of the terms of [the CBA], or for the purpose of discrimination against any Union employees." *Id.* at 7, 33.

---

[2] There is no material difference between the 2011-2014 and 2015-2017 versions of the CBA for purposes of the Court's analysis and so the Court cites to both versions but treats it as one agreement.

The Fund's Trust Agreement provides that each employer, including Hasak, shall make continuing and proper payments to the Fund in accordance with the amounts required by the employer's CBA. The Fund's trustees are empowered to demand and collect contributions, including by instituting and prosecuting legal proceedings to effectuate the collection of these contributions. The Trust Agreement further provides that the Fund may assess interest and liquidated damages at a rate of 5% of the total amount due for each month that contributions remain unpaid against delinquent employers. Finally, the Trust Agreement establishes that the trustees may seek reimbursement from employers for the Fund's costs in collecting the delinquent contributions, including attorneys' and accountants' fees. Pursuant to the Trust Agreement, the Fund adopted an employer contribution collection policy, setting an interest rate of 18% per year and liquidated damages of 5% per month or a flat rate of 20% if litigation was required.

At issue is whether Hasak made the appropriate contributions on behalf of eleven employees. Their employment with Hasak, the contributions Hasak made on their behalf, and the contributions the Fund seeks are as follows:[3]

(1)  Garcia worked in covered employment for Hasak from April 7, 2015 through February 7, 2017 and again from April 1, 2017 through June 23, 2017. Hasak made contributions to the Fund for Garcia from June 2016 through February 2017 and from April 2017 through June 2017. The Fund seeks payment for June 2015 to May 2016.

---

[3] The Fund indicates that its practice is to collect contributions based on whether the employee starts or terminates employment in the first or second half of the month, meaning that if the employee starts between the 1st and 15th of the month, Hasak owes contributions for the entire month, but if the employee starts after the 16th of the month, Hasak does not owe contributions for that month.

(2)      Luna worked in covered employment for Hasak from April 21, 2015 through April 7, 2017. Hasak made contributions to the Fund for Luna from June 2016 through March 2017. The Fund seeks payment for July 2015 to May 2016.

(3)      Cruz has worked in covered employment for Hasak since April 20, 2015. Hasak made contributions to the Fund for Cruz from June 2016 through July 2017. The Fund seeks payment for July 2015 to May 2016.

(4)      Quirino has worked in covered employment for Hasak since May 26, 2015. Hasak made contributions to the Fund for Quirino from June 2016 through July 2017. The Fund seeks payment for August 2015 to May 2016.

(5)      Rentaria has worked in covered employment for Hasak since April 19, 2016. Hasak made contributions to the Fund for Rentaria from August 2016 through July 2017. The Fund seeks payment for July 2016.

(6)      Galeno worked in covered employment for Hasak from April 20, 2016 through March 24, 2017. Hasak made contributions to the Fund for Galeno from August 2016 through March 2017. The Fund seeks payment for July 2016.

(7)      Camarillo worked in covered employment for Hasak from May 18, 2016 through April 27, 2017. Hasak made contributions to the Fund for Camarillo from September 2016 through March 2017. The Fund seeks payment for August 2016 and April 2017.

(8)      Argueta worked in covered employment for Hasak from July 12, 2016 through December 30, 2016. Hasak made contributions to the Fund for Argueta for November 2016 and January 2017 through March 2017. The Fund seeks payment for September, October, and December 2016.[4]

---

[4] The parties do not explain why Hasak made contributions for Argueta from January through March 2017 when his employment terminated on December 30, 2016 or why these contributions should not be

4

(9) Mora has worked in covered employment for Hasak since September 5, 2016. Hasak made contributions to the Fund for Mora from January 2017 through July 2017. The Fund seeks payment for November and December 2016.

(10) Sanchez has worked in covered employment for Hasak since September 20, 2016. Hasak made contributions to the Fund for Luna from January 2017 through July 2017. The Fund seeks payment for December 2016.

(11) Morales worked in covered employment for Hasak from September 5, 2016 through May 25, 2017. Hasak made contributions to the Fund for Argueta from January 2017 through May 2017. The Fund seeks payment for November and December 2016.

Before filing suit, the Fund sought to resolve its delinquent contribution claim with Hasak to no avail. In December 2016, Hasak filed a grievance with Local 781 and requested that Local 781 arbitrate the parties' disagreement over Hasak's interpretation of the CBA as it relates to the Fund contributions. On January 3, 2017, the Fund filed this action. On January 13, 2017, Local 781 rejected Hasak's request to arbitrate, stating that "[a]s is apparent from the grievance, any difference in interpretation over the terms of a collective-bargaining agreement is between [Hasak] and the Welfare Fund." Doc. 22-1 at 156. Although Local 781 indicated that it had not made a demand for the unpaid contributions or directed the Fund to make the claim, it also noted that "[t]he scope of [H]asak's obligation to remit contributions to the Welfare Fund is a dispute between [Hasak] and the Welfare Fund, not the Union." *Id.*

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

---

credited against the underpayments for September, October, and December 2016 that the Fund now seeks to recover. Because this is not an issue raised by Hasak, with Hasak instead raising legal arguments and not taking issue with the underlying calculations of damages, the Court does not address it here.

To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering the Fund's motion for summary judgment, the Court views all evidence in the light most favorable to Hasak, and when considering Hasak's motion for summary judgment, the Court views all evidence in the light most favorable to the Fund. *Id.*

## ANALYSIS

The Fund seeks to recover unpaid contributions for the eleven identified employees for months where Hasak did not timely include them as regular employees after their probationary period ended or prematurely ceased making contributions on their behalf when their employment terminated. In accordance with the Fund's employer contribution collection policy, the Fund also seeks to recover 20% liquidated damages and 18% interest on these contributions. In total,

this amounts to $62,103.20 in contributions, $12,420.64 in liquidated damages, and $16,486.53 in interest through September 2017, when the Fund filed its motion for summary judgment. *See* Doc. 24 at 13 (providing a table of damages). Hasak argues, however, that it properly made contributions for these individuals under its interpretation of the CBA and so does not owe any additional contributions to the Fund.

The parties' dispute here centers on the interpretation of the CBA and whether Hasak retained the ability to modify the amount of time an employee remained a probationary employee before becoming a regular employee, at which point Hasak became obligated to make contributions on that employee's behalf to the Fund. The Fund maintains that the CBA is unambiguous in its terms, clearly providing that, after a sixty-day probationary period, new hires become regular employees who receive the same benefits of employment as other regular employees, including the benefits provided by the Fund. Hasak, on the other hand, argues that it had the ability to extend an employee's probationary period unilaterally and that this is the reason why it did not pay the contributions the Fund seeks to recover on behalf of the eleven employees at issue in this lawsuit. Hasak also maintains that the Court cannot determine the dispute over the CBA's interpretation because this is a matter for arbitration between Hasak and Local 781 and Local 781 refused to arbitrate.

The Fund is a third party beneficiary of the CBA with an "independent statutory right under § 515 of ERISA to enforce contribution obligations imposed on [Hasak] under the CBA." *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Grp., Inc.*, 660 F. Supp. 2d 900, 909 (N.D. Ill. 2009); *Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir. 1988). Therefore, Hasak's argument that the Fund cannot pursue this action until Local 781 and Hasak participate in arbitration holds no water, for the dispute here does not involve Local 781 and is instead between

7

the Fund and Hasak. *See Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 375–76, 104 S. Ct. 1844, 80 L. Ed. 2d 366 (1984) (where trust agreements and CBA do not "evidence any intent to condition the contractual right of the trustees to seek judicial enforcement of the trust provisions on exhaustion of the arbitration provisions contained in [the CBA]," there is "no basis for assuming that the parties intended to require arbitration of disputes between the trustees and the employer" or that the trustees had to "rely on the Union to arbitrate their disputes with the employer"); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 609 (7th Cir. 2002) (finding that dispute over contribution claim is "not between the employer and the union; it is between the Funds, a third party beneficiary of the contract, and an employer"). Hasak claims that the court in *Miscellaneous Warehousemen's Local 781 H&W Fund v. Sunnyside Corp.* determined that questions concerning the interpretation of the CBA must first be resolved in arbitration before a fund may maintain a collection action in court. *See* Doc. 28 at 5 (citing *Sunnyside Corp.*, No. 07 C 6878, Doc. 18 (N.D. Ill. May 12, 2008)). But Hasak misrepresents the court's finding in *Sunnyside Corp.* There, where an arbitration was ongoing and the CBA did not include a definition of "regular employee," the court found it prudent to stay the case because the arbitration decision would "likely . . . provide important information that could bear on the resolution of the present dispute." *Sunnyside Corp.*, No. 07 C 6878, Doc. 18 at 2. The court did not make any determination that the Fund could not pursue its collection action, however, and here, where no parallel arbitration exists, *Sunnyside Corp.* has no bearing on this case. And in *Jaffee v. Shanin Co.*, on which Hasak also relies, the court found that the specific language of the agreement at issue bound both the union and the fund to arbitrate disputes about eligibility for contributions. 763 F. Supp. 286, 290–92 (N.D. Ill. 1991). That, however, is not the general rule, as discussed above, and Hasak does not argue that the CBA at

8

issue here requires the Fund to submit disputes concerning the interpretation of the CBA to arbitration.

Therefore, having found that the Fund may pursue this action, the Court turns to § 515 of ERISA, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145. The Court interprets the CBA using common law rules of interpretation, finding a term ambiguous if "it is susceptible to more than one reasonable interpretation." *Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 731–32 (7th Cir. 1996). The Court may determine unambiguous terms as a matter of law. *Id.* at 732.

Here, the CBA provides that Hasak will pay contributions to the Fund "for each regular employee covered by [the CBA] who has been on the payroll thirty (30) days or more." Doc. 22-1 at 15, 40. The CBA further states that "[n]ew hires shall be deemed temporary employees and on a trial basis until they have worked for sixty (60) days. . . . At the conclusion of the sixty (60) day trial period, new hires shall be deemed regular employees and shall thereupon receive the same benefits and terms and conditions of employment as regular employees." *Id.* at 7, 32–33. Read together, the CBA only lends itself to one reasonable interpretation—that after a new hire worked for sixty days, he or she became a regular employee and consequently, the CBA obligated Hasak to pay contributions on that employee's behalf.

Hasak argues, however, that it could unilaterally extend a temporary employee's probationary period beyond the sixty days, citing to the CBA's provision regarding management rights. *See id.* at 7, 33 (giving Hasak exclusive rights to the management of its business and the direction of its work force, including "the right to discharge for proper cause, transfer, promote,

demote or relieve employees from duty because of lack of work or for other reasons, . . . and the right to establish and maintain rules and regulations governing the plant"). But the management rights provision in the CBA did not give Hasak the ability to unilaterally amend the terms of the CBA. *See Chicago Area Int'l Bhd. of Teamsters Severance & Ret. Fund v. Sebert Landscaping Co.*, No. 14-cv-00338, 2016 WL 6395456, at *6 (N.D. Ill. Oct. 27, 2016) (finding that management rights provision in CBA did not entitle employer to use employees as if they were installers but compensate them as if they were landscape helpers). Because the Court "must enforce the terms of the CBAs when those terms are unambiguous," *Cent. States, Se. & Sw. Areas Pension Fund v. Hartlage Truck Serv., Inc.*, 991 F.2d 1357, 1361 (7th Cir. 1993), and here, the CBA clearly indicates that, after sixty days, probationary employees became regular employees, the Court cannot credit Hasak's interpretation of the CBA.

The Court also rejects Hasak's argument that Local 781 has acquiesced or ratified Hasak's interpretation of the CBA. Any such actions by Local 781 have no effect on the Fund and its right to collect contributions pursuant to the CBA. *See Cent. States, Se. & Sw. Areas Pension Fund v. Joe McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994) ("No matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation to the pension fund, which is not party to local understandings and limitations."); *Robbins*, 836 F.2d at 334 ("A claim that the union has promised not to collect a payment called for by the agreement is not a good answer to the trustees' suit[.]"). Nor can Local 781's refusal to participate in arbitration with Hasak be considered a resolution of the unpaid contributions dispute, where Local 781's response to Hasak's grievance only indicated that the grievance made clear that the dispute was between Hasak and the Fund and did not involve Local 781. *See Schneider Moving & Storage Co.*, 466

10

U.S. at 375 (in rejecting the argument that a fund is to rely on the union to arbitrate its disputes with an employer, noting the problems with such a position where the union could "refuse to arbitrate the claim, or compromise the trustees' position in arbitration" if the union "disagreed with the trustees' construction of the agreement," which would predetermine the outcome of any subsequent judicial proceeding). Because "[p]ension and welfare funds are entitled to rely on the writings they receive," regardless of any "side agreement" that the union and the employer may have, *Russ v. S. Water Mkt., Inc.*, 769 F.3d 556, 558 (7th Cir. 2014), the Court enforces the agreement as written, finding that Hasak owes contributions for the eleven identified employees beginning from the sixtieth day of their employment with the company. And because the Fund has provided a detailed basis for why Hasak owes payments, founded in the CBA, the Court rejects Hasak's argument that ordering it to pay the unpaid contributions would violate 29 U.S.C. § 186(c)(5)(B).

Therefore, the Court finds for the Fund on its claim for unpaid contributions, liquidated damages, and interest on behalf of the eleven identified individuals. The Fund also seeks interest and liquidated damages based on Hasak's late payment of its September 2016 contributions and its incorrect payments for December 2016 and July 2017. The employer collection policy establishes that contributions are due by the fifteenth day of the month following the month in which the work was performed, meaning that Hasak's September 2016 contribution was due October 15, 2016. Hasak made its September 2016 contribution by a check dated November 22, 2016. Hasak does not make any argument that the Funds' request for interest and liquidated damages on this late payment is improper, and the Court finds it supported by the record evidence. Therefore, the Court also awards the Fund these requested amounts.

The Fund also seeks liquidated damages and interest on Hasak's alleged underpayments in December 2016 and July 2017. The Fund contends that Hasak improperly applied credits for certain individuals in these months. The documentation clearly supports this for the July 2017 underpayments. Although Hasak does not appear to take issue with the December 2016 underpayment, the Fund should submit the June 2016 pre-printed invoice to establish that Galeno and Rentaria did not appear on it.

Finally, the Court finds that the Fund is entitled to recover its reasonable attorneys' fees and costs in bringing this action to recover the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(D). Not only does ERISA provide for such an award, but the Trust Agreement also states that the Fund may require the employer to reimburse it for the cost of collecting delinquent contributions, including attorneys' fees. The Court therefore instructs the Fund to submit documentation to establish the amounts to which it claims it is entitled.

## CONCLUSION

For the foregoing reasons, the Court grants the Fund's motion for summary judgment [23] and denies Hasak's motion for summary judgment [25]. The Court enters judgment against Hasak. The Fund has until March 19, 2018 to submit to the Court documentation establishing the amount to which the Fund claims it is entitled.

Dated: March 2, 2018

SARA L. ELLIS
United States District Judge